KLEES, Judge.
Defendant Grand Properties, Ltd. appeals the judgment of the trial court awarding the sum of $18,675.81 to plaintiff Latter & Blum, Inc. We affirm.
On February 3, 1984, plaintiff and defendant entered into a Rental Agency Agreement (hereinafter referred to as the “Listing Agreement”) whereby Latter & Blum, a real estate brokerage firm, agreed to serve as the leasing agent for certain retail space located on the basement level and ground floor of the building at 201 Baronne Street. According to the Listing Agreement, the Owner (Grand Properties) agrees to pay Latter & Blum a commission on all “rentals received” as a result of any lease concluded during the existence of the Agreement. Schedule A of the Listing Agreement states that the commission “shall be calculated and based on the gross rents over the base period of each lease and shall be payable as follows: (A) 4% on • initial term rentals, (as defined herein), cash, payable to Latter & Blum, Inc. when Tenant opens for business: (B) 4% commission shall apply to defined initial renewals, extensions and expansions of space, contained in the original lease agreement ... paid at the commencement of the renewal, extension or expansion payments of rent.”
The retail space was leased to various tenants, and Grand Properties paid some of the commissions due. However, on October 10, 1990, Latter & Blum filed suit for commissions allegedly due on three leases: Commonwealth Trading, Inc. (hereinafter “Commonwealth”), AmeriSource, and Grand Holdings, Inc., d/b/a Martin Wine Cellar. Trial was held on December 19, 1991. The parties stipulated to eighteen exhibits, including the Listing Agreement, all the leases in question, the amount of rents that had been received by Grand Properties and the amount of commissions that had been paid to Latter & Blum. The only witness at trial was Richard Stone, who testified for Latter & Blum. Mr. Stone, a vice-president of Latter & Blum, stated that the real estate agency was owed a total of 18,675.81 in commissions *82 according to the Listing Agreement. His testimony primarily authenticated the documents already introduced into evidence. At the conclusion of the trial, the trial judge took the matter under advisement. In its Post-Trial Memorandum, Grand Properties took the position that it had actually overpaid Latter & Blum and was due a setoff for leases on which it had paid commissions initially but had never received the total projected rentals from the lessees. Grand Properties contended that although the entire 4% commission is payable when the tenant opens for business, it is not actually earned until the rentals upon which it has been based are received.
On February 3, 1992, the trial court rendered judgment for Latter & Blum in the exact amount of plaintiffs calculations, plus interest and costs. The trial court gave no reasons for judgment, and has failed to comply with the request for written findings of fact and reasons for judgment filed by the defendant on February 5, 1992. The defendant has appealed suspen-sively.
We first note that article 1917 of the Code of Civil Procedure, requiring that a court give written findings of fact and reasons for judgment when a timely request to do so is made by a party, is mandatory, not discretionary. Graham v. St. Charles General Hospital, 559 So.2d 979, 980 (La.App. 4th Cir.1990). Here, the request was filed two days after the signing of the judgment, which is within the ten-day period granted by the article. When a trial court has failed to comply with such a request, the proper remedy is for the aggrieved party either to apply for supervisory writs or to file in the appellate court a motion to remand the case for the purpose of requiring the trial judge to comply with the request. Graham, supra; Seymour v. Seymour, 423 So.2d 770, 775 (La.App. 4th Cir.1982). In Seymour, where the appellant neither sought writs nor moved for remand, we decided the case based upon the record. Id. In the instant case, Grand Properties has not moved for a remand, but rather urges us to consider the judgment null and void for lack of reasons and to decide the case based upon our own de novo review of the documentary evidence. While we do not agree that the trial court’s failure to comply with C.C.P. article 1917 makes its judgment a nullity, we do agree that, in the instant case, the documents speak for themselves. Because the case hinges upon documentary evidence, rather than credibility of witnesses, we are in as good a position as the trial judge to make a fair and independent evaluation of that evidence, and therefore the manifest error standard does not apply. Goins v. Texas State Optical, Inc., 463 So.2d 743, 744-745 (La.App. 4th Cir.1985).
Latter & Blum claims that commissions are owed it on three leases. The first, a $14,964.00 commission on the Commonwealth lease, is admitted to by Grand Properties. The other amounts claimed are a $2,213.56 commission on the AmeriSource lease and a $1,498.25 commission on the Martin Wine Cellar lease.
With regard to the AmeriSource lease, Grand Properties argues that the $55,339.00 lease cancellation payment it received from the tenant does not constitute rent, and therefore no commission is owed on it. The provisions of the AmeriSource lease and the Listing Agreement refute this argument. We find that the tenant, AmeriSource, exercised its right to cancel the lease after a certain time by paying six months’ rent, as is evidenced by two letters introduced at trial. Schedule A of the Listing Agreement clearly provides that a commission is owed on such a cancellation payment.
With regard to the other commissions claim by plaintiff, defendant’s primary argument is that Grand Properties is due a setoff for amounts it paid in commissions to Latter & Blum for leases entered into by tenants who vacated early or otherwise failed to pay the full amount of rent owed. In the case of Martin Wine Cellar, defendant contends that it is owed a refund because it paid Latter & Blum an annual commission for four years of a ten-year lease, but Martin Wine Cellar terminated the lease after approximately two and one-half years due to lack of sales volume, and *83 paid no further rent. Defendant also argues that it is owed a setoff in the amount of $19,760.76, which represents a commission it paid to Latter & Blum upon the signing of a ten-year lease with Metropolitan Marketers, Inc. (hereinafter referred to as “Metropolitan”) based on a projected rental income of $494,022.00, which income was never received.
Defendant claims that these refunds are owed to it because the term “rentals” is defined in Schedule A of the Listing Agreement as “monies actually received by the Owner from the Tenant.” Therefore, according to defendant’s argument, there is no commission earned on projected rentals not actually received, even though the commission has already been paid to the leasing agent. We do not reach this argument, however, because defendant is procedurally barred from claiming a setoff. A setoff is an affirmative defense which must be specifically pleaded. Futrell v. Premiere Life Ins. Co., 526 So.2d 1382, 1385 (La.App. 2d Cir.1988), writ denied, 532 So.2d 155 (La.1988); Jacobs v. Grayson, 432 So.2d 1036 (La.App. 1st Cir.1983); La.Code Civ.Pro. art. 1005. Grand Properties failed to raise this defense in its answer, and therefore we decline to consider it here. See Futrell, supra, at 1385; C & D Pressure Testing Inc. v. Estate of Darbonne, 469 So.2d 1170, 1173 (La.App.3d Cir.1985).
Defendant’s only other argument on appeal is that the prepaid commission on the Metropolitan lease was not actually owed because the lease was entered into one day after the Listing Agreement with Latter & Blum had expired. This argument is without merit. The Listing Agreement had an initial six-month term ending August 2, 1984. Several extensions of that term are attached to the Agreement. These extensions, on a Latter & Blum form, are printed with the name of a Latter & Blum representative on the signature line designated “(Agent)” and are signed by a representative of Grand Properties on the line designated “(Seller)”. Defendant contends the extensions are not valid because they were not signed by a Latter & Blum representative. If this were the case, it would invalidate all the commissions claimed by Latter & Blum herein because» all three leases were entered into after August 2, 1984. We find, however, that Grand Properties is estopped from making this contention because it continued to pay commissions regularly to Latter & Blum for several years after the date it now claims the Listing Agreement expired. Moreover, each of the individual leases introduced into evidence contains a section entitled “Brokerage Commissions” which recites the exact commissions to be paid by the landlord to Latter & Blum and the time payment is due. A representative of Latter & Blum signed each lease along with the landlord, Grand Properties, and the tenant. Therefore, even if the Listing Agreement had expired, the parties’ obligations would have continued in effect under the leases. We therefore reject defendant’s argument in this respect.
Accordingly, for the reasons given, we affirm the judgment of the trial court, with all costs to be borne by appellant.
AFFIRMED